441 P.2d 707

**The STATE of Utah, Plaintiff and Respondent,**

**v.**

**Darwin OLSEN, Defendant and Appellant.**

**No. 10871.**

Supreme Court of Utah.

May 27, 1968.

Dale E. Stratford, John Blair Hutchison, Ogden, for appellant.

Phil L. Hansen, Atty. Gen., LeRoy S. Axland, Asst. Atty. Gen., Salt Lake City, for respondent.

HENRIOD, Justice.

Appeal from a second degree burglary conviction by the court sitting without a jury. Reversed and remanded for a new trial.

One Hunt, Mary Jones, defendant Olsen, and one Nielson went to defendant's home where they obtained a crowbar in the wee hours of the morning. Olsen and Nielson, in the latter's car, were followed by Mary and Hunt in the latter's car. They all drove to Hyrum, Utah, which had a drug-store. All four then boarded Hunt's car and drove around Hyrum for a spell. Hunt parked about a block from the drug-store, where Olsen and Nielson disembarked with the crowbar and a zipper bag. They headed for the drug store. Later Mary heard a screeching sound. She and Hunt then drove around Hyrum and later returned, picking up Olsen and Nielson. Mary opened the door to let them in. Everyone went back to Nielson's car, where they separated, Olsen and Nielson getting in the latter's car. All four then rendezvoused at Mary's apartment, zipper bag filled with narcotics, crowbar and all. Thereafter ensued a dope party, everyone participating, lasting for about a day and a half, when they parted, Hunt taking the crowbar and the narcotics to his home.

The above-mentioned facts, together with others that need not be recited, were testified to by Hunt and Mary who had turned State's evidence in exchange for immunity.

While the break-in at the drug store was in progress, an independent witness jotted down Hunt's license number and reported it to the sheriff. While Hunt was absent the sheriff sought him out at his home. When he returned home his parents told him the sheriff was looking for him. Hunt then turned the crowbar and the loot over to the sheriff.

It is difficult to find Hunt and Mary as anything but accomplices. Title 77–31–18, Utah Code Annotated 1953, requires corroboration of an accomplice's testimony. In our opinion there was no corroboration in this case and we so hold.

The sheriff said there were two sets of shoe prints in the vicinity of the drug store, one set indicating that the shoes had pointed toes. It is significant that *after* the sheriff had so testified, Mary said Nielson had shoes with pointed toes. Lots of people wear shoes with pointed toes, including the author of this opinion and the trial judge in this case. The record is bare of any independent evidence tending to connect the defendant with the crime, and ir-

**130**

respective of what our own opinions might be as to the facts, the statute is controlling, and we are constrained to believe that such statute has considerable reason and wisdom for its existence.

CROCKETT, C. J., and CALLISTER and TUCKETT, JJ., concur.

ELLETT, Justice (dissenting).

I dissent. This court in the case of State v. Coroles, 74 Utah 94, 98, 277 P. 203, defined "an accomplice" in the words of 1 Wharton's Crim.Ev. (10th Ed.) § 440, p. 921, thus:

> An accomplice is a person who knowingly, voluntarily, and with common intent with the principal offender, unites in the commission of the crime. The co-operation in the crime must be real, not merely apparent.

When the facts regarding the conduct of the alleged accomplice are not in dispute, it is a matter of law for the court to say whether the witness is an accomplice or not. However, if the facts or inferences to be drawn therefrom are in dispute as to whether the witness did or did not do the things which would make him an accomplice if he did them, then it is for the jury to determine whether or not the witness is in fact an accomplice with the defendant. 23 C.J.S. Criminal Law § 797.

The instant case was tried to the court, and we must honor the findings of the judge regarding the question of whether the witnesses or either of them was an accomplice. Unless the evidence in that regard is not in dispute, we cannot substitute our belief for that of the trial court. By finding the appellant guilty, the judge of necessity had to find that at least one of the witnesses was not an accomplice.

Let us consider the witness Mary Jones. The facts reveal that the defendant obtained a crowbar at his own home while the witness was present. We are not told in the main opinion that she knew what the crowbar was to be used for, and even if she did know that the defendant intended to commit a burglary, that alone would not make her an accomplice. Thereafter this witness and the three men drove around town for a spell, until finally the defendant and one of the other men got out of the car. It is not claimed that this witness knew what their plans were. In fact, the record shows that she had been alone in a closed car while the burglary was being planned out of her hearing by the men. She and her date, Hunt, did not stand guard after the defendant and his companion left the car and disappeared into the darkness. In fact, they drove around town and subsequently twice returned to the place where the defendant had left the car. The main opinion says that she heard a screeching sound coming from the direction of the drug store. This, however, was after she and her companion

had returned the first time to the scene; and even if a screeching sound gives one knowledge that a burglary is being committed, it does not make one who hears it an accomplice to the crime. This witness had no part in planning the crime nor in perpetrating it. What her intentions were with the three men is not revealed by the facts stated in the main opinion nor in the record, and until it is shown that she was in some manner connected with the planning of the burglary of the particular drug store in question, or in the perpetrating of that crime, we cannot say as a matter of law that she was an accomplice thereto.

The main opinion says that she opened the car door and let the defendant and his companion enter therein after the burglary had been consummated. This and all of that which occurred thereafter could not possibly do more than make her an accessory after the fact, assuming that she knew at the time that the crime of burglary had been committed and that she was assisting the criminals to escape. This does not amount to being an accomplice. See People v. Chadwick, 7 Utah 134, 138, 25 P. 737, wherein it is stated:

> One who is a principal cannot be an accessory after the fact. A person is an accessory after the fact only after he has full knowledge that a felony has been committed, and then conceals that knowledge from a magistrate, or harbors

and protects the person charged or connected therewith. * * * If, then, Green was not a principal or accomplice in this crime, * * * it was not necessary that his testimony should have been corroborated, * * * in order to give it such weight as would ordinarily attach to it. Nor do we think it was the intention of the legislature to require the testimony of an accessory after the fact to be corroborated, * * *.

The defendant had a fair trial before a fair, impartial, and competent trial judge and was found guilty. I would affirm the judgment of the trial court.